IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

COLETTE AOKI, Individually and )   Civ. No. 20-00464 HG-RT
as Personal Representative of )
the Estate of Grace S. Aoki; )
CHARLENE AOKI; and DOE )
PLAINTIFFS 1-5, )
                               )
            Plaintiffs, )
                               )
      vs. )
                               )
MOBILEHELP, LLC; MOBILEHELP )
GROUP HOLDINGS, LLC; DOES 1-5; )
and DOE ENTITIES 1-5, )
                               )
            Defendants. )
                               )

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(ECF No. 90)**

On November 25, 2019, Grace S. Aoki ("Decedent") died at the age of 84 years old.  The Decedent had stage IV chronic kidney disease, coronary artery disease, type II diabetes, peripheral vascular disease, hyperlipidemia, and a history of heart complications.  She was legally blind and had additional medical issues.

At the time of her death, the Decedent was in possession of Defendants MobileHelp, LLC and MobileHelp Group Holdings' ("Defendants") medical alert system, which included a pendant device.  The system is intended to allow a user to seek assistance by pressing a button on one of the devices to receive assistance in contacting emergency services.

1

Plaintiffs are Colette and Charlene Aoki, the Decedent's daughters.  They have filed suit asserting thirteen claims against the Defendants, seeking to hold them responsible for the death of the Decedent.

Defendants filed a Motion for Summary Judgment asserting that there is no evidence that Defendants' actions or omissions caused or contributed to the death of the Decedent.

Defendants' Motion for Summary Judgment (ECF No. 90) is **GRANTED**.

## PROCEDURAL HISTORY

On September 24, 2020, Plaintiff Colette Aoki, individually and as a representative of the Estate of Grace S. Aoki, Plaintiff Charlene Aoki, and Doe Plaintiffs 1-5 ("Plaintiffs") filed a Complaint in the Circuit Court of the First Circuit, State of Hawaii.  (ECF No. 1-1).

On October 29, 2020, Defendants MobileHelp, LLC, MobileHelp Holdings, LLC, MobileHelp Group Holdings, LLC, and MobileHelp Employee Holdings, LLC, removed the action to this Court.  (ECF No. 1).

On December 22, 2020, the Parties stipulated to the dismissal, without prejudice, of Plaintiffs' claims against Defendants MobileHelp Holdings, LLC and MobileHelp Employee Holdings, LLC.  (ECF No. 26).

On November 15, 2021, MobileHelp, LLC and MobileHelp Group

Holdings, LLC ("Defendants") filed a Motion for Summary Judgment and a Concise Statement of Facts ("CSF").  (ECF Nos. 90 and 91).

On December 9, 2021, Plaintiffs filed an Opposition and a Concise Statement of Facts in Opposition to Defendants' Motion for Summary Judgment.  (ECF Nos. 98 and 99).

On December 17, 2021, Defendants filed a first Errata to correct an exhibit attached to their CSF.  (ECF No. 102).

On January 7, 2022, Defendants filed a Reply in support of their Motion for Summary Judgment.  (ECF No. 110).  Defendants also filed a Further Concise Statement of Facts in Support of their Motion ("FCSF").  (ECF No. 111).

On January 8, 2022, Defendants filed a second Errata to correct errors in their Reply.  (ECF No. 112).

The same day, Defendants filed a third Errata to correct a declaration included in their FCSF.  (ECF No. 113).

On January 14, 2022, Plaintiffs filed a Supplemental Declaration in support of their Opposition to Defendants' Motion for Summary Judgment.  (ECF. No. 119).

The same day, Defendants filed a fourth Errata to correct two declarations included in their FCSF.  (ECF No. 120).

On January 19, 2022, Defendants filed a Response to Plaintiffs' Supplemental Declaration.  (ECF No. 125).

On February 1, 2022, the Court held a hearing on Defendants' Motion for Summary Judgment.  (ECF No. 132).

## BACKGROUND

The following facts are undisputed:

**The MobileHelp Medical Alert System**

Defendant MobileHelp, LLC is a company that develops and distributes devices and services that enable consumers to seek assistance and potentially summon emergency services by pressing a button on a device.[1]

The MobileHelp Cellular Classic model is one of the medical alert systems developed and distributed by Defendant MobileHelp, LLC.  The MobileHelp Cellular Classic is composed of three items:

(1)  a cellular base station,

(2)  a pendant that may be worn around the neck using a lanyard, and,

(3)  a button that may be worn around the wrist like a wristwatch.

(Photographs of an example of the MobileHelp Cellular Classic components, contained in the expert report of Andrew Paris, attached to Defs.' Reply at Ex. T, ECF No. 111-11; MobileHelp User Guide, attached as Ex. E to Defs.' Concise Statement of Facts in Support of Motion ("CSF"), ECF No. 91-6).

The cellular base station is powered by a cord through an

---

[1] Defendant MobileHelp Holdings, LLC is an equity holding company that does not transact or engage in business. (Declaration of Dennis Boyle ("Boyle Decl."), President and Chief Operating Officer of MobileHelp, LLC, attached to Defs.' CSF, ECF No. 91-1).

electrical outlet, and it has a battery backup.  (MobileHelp User Guide, Ex. E to Defs.' CSF, ECF No. 91-6).  The neck pendant and wrist button are battery operated.  (<u>Id.</u>)

Each of the three items contains a button that, when pressed, contacts a central monitoring station staffed by Defendant MobileHelp, LLC operators.  (<u>Id.</u> at p. 12).  The operator is able to speak with the user through the equipment. (<u>Id.</u>)  The operator may then contact emergency services if requested by the user or if the operator otherwise finds it necessary.  (<u>Id.</u> at pp. 12-16).

The equipment is not sold to the user but is leased pursuant to a monitoring agreement.  (MobileHelp Personal Emergency System Monitoring Agreement, attached as Ex. B to Defs.' CSF, ECF No. 91-3).  The monitoring agreement provides that the user is to test the medical alert system on a monthly basis.  (<u>Id.</u>; <u>see</u> Boyle Decl. at ¶ 11, attached to Defs.' CSF, ECF No. 91-1; MobileHelp Newsletter at p. 2, attached as Ex. F to Defs.' CSF, ECF No. 91-7).

**The Decedent Possessed The Defendants' MobileHelp Cellular Classic Product**

Defendant MobileHelp, LLC's MobileHelp Classic medical alert system was purchased in October 2011 for Grace Aoki ("Decedent") by a third-party.  (MobileHelp Invoice dated October 14, 2011, attached as Ex. A to Defs.' CSF, ECF No. 91-2).

In December 2013, Defendant MobileHelp, LLC shipped an
upgraded system to the Decedent.  (MobileHelp Invoice dated
December 30, 2013, attached as Ex. D to Defs.' CSF, ECF No. 91-
5).

On January 14, 2014, the newly received system was
successfully set-up and tested with the help of a MobileHelp
technician, with the Decedent's daughter, Plaintiff Charlene
Aoki, also on the call.  (Boyle Decl. at ¶ 15, ECF No. 91-1; see
Spreadsheet of MobileHelp Account Tickets pertaining to Grace S.
Aoki, attached as Ex. C to Defs.' CSF, ECF No. 91-4).

The Decedent's 2013 MobileHelp system was successfully
tested eight separate times between August 9, 2015 and June 18,
2019.  (MobileHelp Central Station History Summaries for Grace S.
Aoki, attached as Ex. G to Defs.' CSF, ECF No. 91-8).

**The Decedent's Death On November 25, 2019**

The Plaintiff daughters indicate that they met with the
Decedent weekly at Kahala Mall.  (See Declaration of Charlene
Aoki, attached to Pls.' Opp., ECF No. 98; Declaration of Colette
Aoki, attached to Pls.' Opp., ECF No. 98).  They indicate the
Handi-Van was usually scheduled to pick up the Decedent at her
home at 9:30AM to drive her to the mall for the meeting.  (Id.)

The records for the Handi-Van indicate that on November 25,
2019, there was a scheduled pick up for the Decedent at her home

at 9:30AM.   (TheHandi-Van Records at pp. 16-17, attached at Ex. I to Defs.' CSF, ECF No. 91-11).  The Handi-Van records for November 25, 2019 indicate that the Decedent was a "NO SHOW" at 10:05AM.  (Id.)

When the Decedent did not arrive at the mall to meet Plaintiffs on November 25, 2019, the Plaintiffs went to the Decedent's home.  Plaintiffs discovered the Decedent lying on the floor in her bedroom and called 911 at 11:21AM.  (Emergency Medical Services of the City and County of Honolulu Report, attached as Ex. J to Defs.' CSF, ECF No. 91-12).  Neither Plaintiff indicates what time they arrived at their mother's home.  (See Declaration of Charlene Aoki, attached to Pls.' Opp., ECF No. 98; Declaration of Colette Aoki, attached to Pls.' Opp., ECF No. 98).

Emergency Medical Services ("EMS") arrived at 11:32AM and found the Decedent "unconscious, pulseless, and apneic ... asystole in all 3 leads."  (Emergency Medical Services of the City and County of Honolulu Report, attached as Ex. J to Defs.' CSF, ECF No. 91-12).  The EMS Report states that the Decedent was "Dead at Scene."  (Id.)

EMS records state that "[w]alking in to the residence a trail of dried blood was noted from the living room, leading in to the [Decedent's] bedroom."  (Id.)  There was "[d]ried blood noted to the socks [the Decedent] was wearing and dried blood

noted to both of [the Decedent's] hands." (Id.)  The Decedent was on the bedroom floor "with dried blood on the floor and with a lot of furniture and objects scattered around ... [the Decedent] was extricated to the living room." (Id.)

The EMS Report states that the Decedent was "slightly warm to the touch" with no "rigor mortis noted," but there was a hematoma to the right orbital area of her face with dried blood on the Decedent. (Id.)  The EMS Report states that the Plaintiffs' last contact with the Decedent was at 6:30PM the previous evening. (Id.)

EMS attempted resuscitation for 20 minutes, but it was unsuccessful.[2] (Id.)  The Decedent was pronounced dead at 12:01PM. (Id.)

**The Decedent's Medical Condition At The Time Of Death**

Joey Y. Kohatsu, M.D. was the Decedent's primary care physician. (Deposition of Dr. Kohatsu ("Kohatsu Depo.") at p.

---

[2] EMS engaged in rescutitative efforts on the Decedent when she had no pulse and was not breathing for at least 20 minutes, despite the fact that on August 19, 2019, the Decedent signed a "Do Not Attempt Resuscitating/DNAR (Allow Natural Death)" Order prohibiting resuscitation on the Decedent when she had no pulse and was not breathing. (See Decedent's DNAR attached as Ex. V to Defs.' FCSF, ECF No. 111-15). According to EMS, Plaintiffs told them there was no DNAR for the Decedent, but when the DNAR was discovered they admitted they knew the form existed and "adamantly stated for EMS and HFD to disregard the form and continue resuscitation efforts." (Emergency Medical Services of the City and County of Honolulu Report, attached as Ex. J to Defs.' CSF, ECF No. 91-12).

22, attached as Ex. O to Defs.' CSF, ECF No. 91-17).  At the time
of her death, the Decedent suffered from a number of serious
comorbidities including chronic kidney disease stage V, coronary
artery disease, and type II diabetes.  (Id. at p. 25; Certificate
of Death, attached as Ex. L to Defs.' CSF, ECF No. 91-14).  The
Decedent was also legally blind and had trouble reading and
seeing.  (Kohatsu Depo. at p. 27, attached as Ex. O to Defs.'
CSF, ECF No. 91-17).

Kalani Yamamoto, M.D., was the Decedent's nephrologist.
(Medical Records of Decedent from Kalani Yamamoto, M.D., at pp.
7-9, attached as Ex. N to Defs.' CSF, ECF No. 91-16).  The
Decedent visited Dr. Yamamoto on September 23, 2019,
approximately two months prior to her death.  A review of Dr.
Yamamoto's records demonstrates that the Decedent suffered from a
number of severe ailments affecting her kidneys including: type
II diabetes mellitus with renal complication, chronic kidney
disease, stage IV (severe), hypertension, and anemia in chronic
kidney disease.  (Id.)  Dr. Yamamoto's notes reflect that he
reviewed the severity of the Decedent's kidney condition with
both the Decedent and her daughters and that the Decedent
expressed that she did not want dialysis treatment.  (Id.)

The record includes the Decedent's medical history as
provided on her application to receive disability services from
TheHandi-Van.  (TheHandi-Van Eligibility Application for Grace

Aoki dated May 1, 2017, attached as Ex. I to Defs.' CSF, ECF No. 91-11). On her application it was declared that the Decedent walked with a cane, was legally blind, had a history of heart complications, arthritis, and other medical issues.  (Id.)

There is no evidence as to the actual time of death of the Decedent.  EMS Reports indicate the Decedent was never revived after they arrived at her home at 11:32AM.  (Emergency Medical Services of the City and County of Honolulu Report, attached as Ex. J to Defs.' CSF, ECF No. 91-12).

There is no admissible evidence that the Decedent pressed any of the buttons on her medical alert system on November 25, 2019.

There is no evidence that a call or message was received by MobileHelp from any of the medical alert devices in the Decedent's possession on November 25, 2019.

The Decedent was alone in her home on the morning of November 25, 2019.  No one had spoken to her since the prior evening.  There were no witnesses or other evidence of what happened in her home prior to the Plaintiffs' arrival at the Decedent's home on November 25, 2019.

There is evidence that the Decedent was wearing the pendant device on November 25, 2019 as it was recovered from the mortuary, but no evidence that she attempted to use the device.

On November 25, 2019, the Decedent's body was transported

from her home to Nuuanu Memorial Park and Mortuary and she was subsequently cremated on December 2, 2019.  (Pls.' Response to Admissions and Interrogatories at ¶ 7, attached as Ex. K to Defs.' CSF, ECF No. 91-13).  No autopsy was performed on the Decedent's body.  (Id. at ¶ 1).

The Certificate of Death provides the Decedent's manner of death as "NATURAL CAUSES" and states the cause of death was due partly to "Gastrointestinal bleeding" and partly due to "Chronic kidney disease stage V, Coronary artery disease, [and] Type 2 diabetes."  (Certificate of Death, attached as Ex. L to Defs.' CSF, ECF No. 91-14).

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  To defeat summary judgment "there must be sufficient 'evidence that a reasonable jury could return a verdict for the nonmoving party.'" Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1997) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."

T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial.  The moving party need not produce any evidence at all on matters for which it does not have the burden of proof.  Celotex, 477 U.S. at 325.  The moving party must show, however, that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law.  That burden is met by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. Id.

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of probative evidence tending to support its legal theory. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282 (9th Cir. 1979).  The opposing party must present admissible evidence showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Nidds, 113 F.3d at 916 (quoting Anderson, 477 U.S. at 249-50).

The court views the facts in the light most favorable to the

non-moving party.  <u>State Farm Fire & Cas. Co. v. Martin</u>, 872 F.2d 319, 320 (9th Cir. 1989).  Opposition evidence may consist of declarations, admissions, evidence obtained through discovery, and matters judicially noticed.  Fed. R. Civ. P. 56(c); <u>Celotex</u>, 477 U.S. at 324.  The opposing party cannot, however, stand on its pleadings or simply assert that it will be able to discredit the movant's evidence at trial.  Fed. R. Civ. P. 56(e); <u>T.W. Elec. Serv.</u>, 809 F.2d at 630.  The opposing party cannot rest on mere allegations or denials.  Fed. R. Civ. P. 56(e); <u>Gasaway v. Northwestern Mut. Life Ins. Co.</u>, 26 F.3d 957, 959-60 (9th Cir. 1994).  "When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact."  <u>Hansen v. U.S.</u>, 7 F.3d 137, 138 (9th Cir. 1993); <u>see also</u> <u>Nat'l Steel Corp. v. Golden Eagle Ins. Co.</u>, 121 F.3d 496, 502 (9th Cir. 1997).

## **ANALYSIS**

## I.   **Proof Of Causation Is A Required Element In Each Of Plaintiffs' Causes Of Action**

Plaintiffs' Complaint (ECF No. 1-1) lists the following causes of action:

Count I:        Negligence

Count II:       Negligent Failure To Warn

Count III:      Strict Product Liability

13

Count IV:          Strict Product Liability - Failure To Warn

Count V:           Breach of Implied Warranty of Merchantability

Count VI:          Breach of Implied Warranty of Fitness

Count VII:         Breach of Express Warranty

Count VIII:        Breach of Duty of Good Faith and Fair Dealing

Count IX:          Loss of Chance

Count X:           Loss of Consortium

Count XI:          Gross Negligence

Count XII:         Unfair and/or Deceptive Acts or Practices

Count XIII:        Civil Conspiracy

Count XIV:         Fraudulent Concealment

At the hearing and in their Opposition to Defendants' Motion for Summary Judgment, Plaintiffs conceded that they are unable to prevail on Counts XII, XIII, and XIV. (Pls.' Opposition at p. 5, ECF No. 98).

 Plaintiffs' claim in Count VIII for Breach of Good Faith and Fair Dealing also fails as a matter of law because Hawaii law only recognizes such a claim in the context of insurance contracts, or where there exists a special relationship involving fiduciary responsibility, public interest, or adhesion, which does not exist here.  Francis v. Lee Enters., Inc., 971 P.2d 707, 711 (Haw. 1999); see also Alii Sec. Sys., Inc. v. Pro. Sec. Consultants, 383 P.3d 104, 112 (Haw. App. 2016).

Each of the remaining causes of action I-XI are premised on

the allegations that the Decedent's death was caused as a result of the purported failure of Defendants' product.  There is no evidence to support Plaintiffs' theory.

## II.  There Is No Evidence Of Causation That Would Allow A Reasonable Jury To Find Defendants Liable

Each of Plaintiffs' negligence and strict product liability claims require proof of causation.  O'Grady v. State, 398 P.3d 625, 632 (Haw. 2017) (requiring proof that defendant's conduct was the legal cause of plaintiff's injuries); Acoba v. Gen. Tire, Inc., 986 P.2d 288, 303 (Haw. 1999) (requiring proof of "a causal connection" between product issue and plaintiff's injuries).

Pursuant to Hawaii law, courts use a substantial factor test to determine causation in cases of negligence.  Plaintiffs must show that "defendant's conduct was a substantial, as opposed to a negligible or trivial, factor in causing the harm."  O'Grady, 398 P.3d at 636.

Causation must be established through expert medical testimony where, as here, causation involves a medical injury involving facts outside common knowledge.  Craft v. Peebles, 893 P.2d 138, 149 (Haw. 1995); Haake v. Safeway, 819 F. Supp. 2d 1132, 1137 (D. Haw. 2011).

In addition, all of the breach of warranty claims require evidence that the Defendants' product failed and caused harm. Adon Constr. Inc. v. Renesola Am. Inc., Civ. No. 16-00568 JAO-

WRP, 2019 WL 2236073, *9-*10 (D. Haw. May 23, 2019) (granting summary judgment where plaintiffs failed to demonstrate that they suffered harm that was directly or proximately caused by the product's failure and explaining that proof of both a product's failure and proof that the failure caused damages are essential elements of a breach of warranty claim under Hawaii law).

Here, there is no evidence that any action or omission of the Defendants was a substantial factor in causing the Decedent's death.  There is also no evidence that Defendants' products failed and that such a failure caused or contributed to the Decedent's death.

### A.    There Is No Evidence The Defendants' Product Failed And Caused The Decedent's Death

There is no evidence that the Decedent used or attempted to use the Defendants' products on the morning of November 25, 2019. There is no record from Defendants that they ever received a signal from the Decedent's devices.  A review of the Account Tickets Spreadsheet pertaining to the Decedent's MobileHelp devices demonstrates that no calls were received from the Decedent's devices to MobileHelp on November 25, 2019.  (See Spreadsheet of MobileHelp Account Tickets pertaining to Grace S. Aoki, attached as Ex. C to Defs.' CSF, ECF No. 91-4).

There is no eyewitness nor any physical evidence to establish that the Decedent tried to use her MobileHelp devices

on November 25, 2019.

Plaintiffs submitted affidavits stating that they believe the Decedent would have tried to use the Defendants' devices, but there is no evidence to support their claim. A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact to defeat summary judgment. Nilsson v. City of Mesa, 503 F.3d 947, 952 n.2 (9th Cir. 2007).

Plaintiffs' statements are merely speculation, include hearsay, and do not provide admissible evidence to create a genuine issue of material fact as to whether the Defendants' products failed on the morning of November 25, 2019. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002); Harkins Amusement Enters., Inc. v. Gen. Cinema Corp., 850 F.2d 477, 490 (9th Cir. 1988).

### 1.   There Is No Chain Of Custody Of The Device

Plaintiffs have no evidence to demonstrate the state of the product when it was last in the care of the Decedent. Instead, Plaintiffs explain that the pendant necklace was recovered from the Decedent's body at the mortuary before she was cremated. (Declaration of Charlene Aoki at ¶ 8, attached to Pls.' Opp., ECF No. 98; Declaration of Colette Aoki at ¶ 11, attached to Pls.' Opp., ECF No. 98). When it was returned to the

17

Plaintiffs, the device was wet.  (Id.)  The Plaintiffs say that the mortuary had cleaned it.  (Id.)  The employee from the mortuary states that she does not recall what the device looked like, nor the condition of the device when the Decedent was brought to the mortuary.  (Declaration of Sandee S. Honma at ¶ 8, attached to Defs.' FCSF, ECF No. 111-5).

There is no chain of custody of the device that would allow for an inference that the product was faulty.  A plaintiff in a product's liability case must present evidence that the product's defect existed at the time of the product's alleged failure, and the mere presence of a defect after a break in the chain of custody, by itself, is insufficient to create a material question of fact for trial.  See Crayton v. Amadeo Rossi, S.A., 384 Fed. App'x 330, 332 (5th Cir. 2010); Lee v. Boyle-Midway Household Prods., Inc., 792 F.Supp. 1001, 1006 (W.D. Penn. May 12, 1992) (explaining that a plaintiff generally must establish chain of custody of the allegedly faulty product in a products liability case in order to defeat summary judgment).

2.   **The Decedent Suffered From Numerous Life-Threatening Conditions At The Time Of Her Death And There Is No Evidence That Any Purported Failure Of The Defendants' Device Caused The Decedent's Death**

Even if the Court assumed the Defendants' products failed, Plaintiffs cannot demonstrate that the purported failure of the

18

products substantially contributed to the Decedent's death.

The record demonstrates that at the time of her death on November 25, 2019, the Decedent suffered from a number of ailments including: chronic cholecystitis, stage IV chronic kidney disease, coronary artery disease, type II diabetes, peripheral vascular disease, and hyperlipidemia.  (Medical Records of Decedent from Kalani Yamamoto, M.D. at p. 9, attached as Ex. N to Defs.' CSF, ECF No. 91-16; Kohatsu Depo. at pp. 25-27, attached as Ex. O to Defs.' CSF, ECF No. 91-17; Certificate of Death, attached as Ex. L to Defs.' CSF, ECF No. 91-14).

 The Decedent walked with a cane, was legally blind, had a history of heart complications, arthritis, and other medical issues.  (TheHandi-Van Eligibility Application for Grace Aoki dated May 1, 2017, attached as Ex. I to Defs.' CSF, ECF No. 91-11).

Defendants' products do not guarantee that a user will not suffer any harm, or death, even if they successfully use the devices to contact emergency services.  Defendants' products merely assist a user to contact an operator.  There must be evidence to demonstrate that the Decedent would not have died without the failure of the Defendants' products, and there is no such evidence in this case.

There is no evidence as to when the Decedent became in distress, when the Decedent began bleeding, what caused the

Decedent to bleed, when the Decedent lost consciousness, when the Decedent stopped breathing, when the Decedent lost a pulse, and when the Decedent died. There is no ability to infer that the purported failure of the Defendants' products contributed to the Decedent's death.

**B.    There Is No Evidence As To When Plaintiff Died**

Plaintiffs must prove that the Defendants' actions or omissions caused the Decedent's death in order to prevail on their claims. Plaintiffs are unable to meet their burden because there is no evidence as to when the Decedent died.

Here, there is evidence that the Decedent's daughters went to her home on the morning of November 25, 2019. The record does not establish at what time the daughters went to the home. The Report from Emergency Medical Services for the City and County of Honolulu ("EMS") states that EMS personnel arrived at the Decedent's home at 11:32AM. (Emergency Medical Services of the City and County of Honolulu Report, attached as Ex. J to Defs.' CSF, ECF No. 91-12).

"[D]ried blood was noted from the living room, leading in to the [Decedent's] bedroom" where she was found "unresponsive, pulseless, and apneic laying supine on the bedroom [floor] of her residence." (Id.) The EMS Report states that the Decedent's daughters and Honolulu Police Department personnel were present

at the scene, but it does not state when they arrived.  (Id.)

EMS Officers reported that the Decedent was "Dead at Scene" and Plaintiffs stated that they "arrived at [the Decedent's] residence to find the trail of dried blood and [the Decedent] unconscious and without a pulse on the bedroom floor ... between the bed and the wall."  (Id.)  Plaintiffs last spoke to the Decedent at 6:30PM the previous evening.  (Id.)

The EMS Report stated that when they examined the Decedent she had a hematoma to the right orbital area of her face, and she was unconscious, pulseless, not breathing, and had no electrical activity in her heart.  (Id.)

There is no ability for a reasonable trier of fact to find that the Defendants' acts or omissions caused the Decedent's death.  There is no evidence as to when the Decedent died.  It is undisputed that the Decedent was unconscious, pulseless, and apneic at the arrival of the EMS personnel at 11:32AM.  There is no evidence as to the approximate or actual time the Decedent died.  Plaintiffs are unable to prove causation on the part of the Defendants without evidence to establish the Decedent's time of death.  See McKenna v. Volkswagenwerk Aktiengesellschaft, 558 P.2d 1018, 1022-26 (Haw. 1977).

No autopsy was conducted of the Decedent's body to establish either the time of death or the cause of Decedent's death. (Pls.'s Response to Admissions and Interrogatories at ¶ 1,

attached as Ex. K to Defs.' CSF, ECF No. 91-13).  There must be sufficient factual evidence to allow the trier of fact to make a determination that the defendant's actions were a substantial factor in causing the resultant injury and that no other intervening act broke the chain of causation.  Mitchell v. Branch, 363 P.2d 969, 973 (Haw. 1961).  No such evidence exists here.  Plaintiffs are unable to establish a causal nexus between the Decedent's death and the Defendants' products.  Barbee v. Queen's Med. Ctr., 194 P.3d 1098, 1123 (Haw. App. 2008).

**C.   There Is No Evidence When The Decedent Began Bleeding**

Plaintiffs provided the EMS Reports, the Parties' Initial Disclosures, the Complaint, and the 911 recordings to John Michael Kowalski, D.O. of Philadelphia, Pennsylvania.  (Kowalski Report, attached as Ex. 3 to Pls.' CSF, ECF No. 98-1 at p. 30). Dr. Kowalski never examined the Decedent when she was alive, never viewed or examined the body of the Decedent after she died, and there was no autopsy report for him to review.

The expert report from John Michael Kowalski, D.O., states that based on his review of the records he believes the Decedent died of a gastrointestinal bleed that complicated her coronary artery disease.  (Id.; Kowalski Decl. at ¶ 6, attached to Pls.' Opp., ECF No. 98 at p. 52).  He speculates that if EMS arrived "within a reasonable time" of her bleed, there is a possibility

that the Decedent's chance of survival would have increased.
(Kowalski Decl. at ¶ 6(c), ECF No. 98 at p. 54).

The jury cannot determine whether Defendants' products'
purported failure was a substantial factor in the Decedent's
death because there is no evidence as to the time that Decedent
began bleeding or the time she died.  There is no evidence as to
when the bleeding began or what caused the bleeding that would
allow the jury to rely on Dr. Kowalski's opinion.  See Barbee,
194 P.3d at 1123 (explaining that the causal link between any
alleged negligence and long-term effects of internal bleeding are
not within the realm of common knowledge and required expert
evidence).

The opinion of Dr. Kowalski merely hypothesizes that if the
Decedent's bleeding was noticed and treated "in a reasonable
amount of time," the Decedent's "chances of survival would have
been greatly increased."  (Kowalski Decl. at ¶ 6(c), ECF No. 98).
When an expert merely testifies that a defendant's action or
inaction *might* or *could have* yielded a certain result, such
testimony is devoid of evidentiary value and fails to establish
causation.  Barbee, 194 P.3d at 1126 (quoting Wicklund v.
Handoyo, 181 S.W.3d 143, 149 (Mo. Ct. App. 2005) (internal
quotation marks omitted)).

Plaintiffs' claims fail because there is no evidence to
establish a causal nexus between Defendants' products and the

Decedent's death.  <u>Craft v. Peebles</u>, 893 P.2d 138, 156 (Haw. 1995); <u>Phillips v. Queen's Med. Ctr.</u>, 613 P.2d 365, 366 (Haw. App. 1980) (finding summary judgment was appropriate when there was no expert medical testimony to link the cause of death to the deficiencies in the medical equipment).

There are no genuine issues of material fact for trial. Plaintiffs have failed to establish causation.

Defendants' Motion for Summary Judgment (ECF No. 90) is **GRANTED**.

<u>**CONCLUSION**</u>

Defendants' Motion for Summary Judgment (ECF No. 90) is **GRANTED**.

The Clerk of Court is **ORDERED** to enter Judgment in favor of the Defendants and to **CLOSE THE CASE.**

DATED:  Honolulu, Hawaii, April 19, 2022.

IT IS SO ORDERED.

Helen Gillmor
United States District Judge

<u>Colette Aoki, Individually and as Personal Representative of the Estate of Grace S. Aoki; Charlene Aoki; Doe Plaintiffs 1-5 v. Mobilehelp, LLC; Mobilehelp Group Holdings, LLC; Does 1-5; Doe Entities 1-5</u>, Civ. No. 20-00464 HG-RT, **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 90)**

24